UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM ALBERT HARRISON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 3:14-cv-05981-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On October 3, 2011, plaintiff protectively filed an application for disability insurance benefits, alleging disability as of November 11, 2008, later amended to December 20, 2010. *See* Dkt. 13, Administrative Record ("AR") 21. This application was denied upon initial administrative review on January 13, 2012, and on reconsideration on May 1, 2012. *See id.* A hearing was held before an administrative law judge ("ALJ") on March 25, 2013, at which

ORDER - 1

plaintiff, represented by counsel, appeared and testified, as did plaintiff's wife and a vocational expert ("VE"). *See* AR 37-70.

In a decision dated April 26, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 18-36. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 27, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 4-7; 20 C.F.R. § 404.981. On December 18, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on February 27, 2015. *See* Dkt. 13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to find that plaintiff's major depressive order was a severe impairment; (2) in evaluating the medical evidence in the record; (3) in discounting plaintiff's credibility; (4) in assessing plaintiff's residual functional capacity ("RFC"); (5) in posing hypotheticals to the VE that did not incorporate all of the plaintiff's severe impairments, relying on evidence contradicting the DOT, and failing to allow appropriate VE testimony; and (6) in failing to properly assess plaintiff's pain. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the medical evidence in the record, and thus in assessing plaintiff's RFC and finding him capable of performing other work, and therefore in determining plaintiff to be not disabled. Also for the reasons set forth below, however, the undersigned recommends that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

ORDER - 2

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must

ORDER - 3

I.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

---

scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 4

the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Plaintiff asserts that the ALJ erred in improperly discrediting the opinions of Dur Huang, M.D., plaintiff's primary care provider. The undersigned agrees. On March 2012, Dr. Huang completed a physical residual functional capacity assessment, in which he opined that plaintiff's pain and other symptoms would frequently be severe enough to interfere with the attention and concentration needed to perform even simple work tasks. *See* AR 416. Dr. Huang also found plaintiff could sit no more than 20 minutes at a time and for about two hours total in a work day, could stand no more than 15 minutes at a time and less than two hours total in a work day, and will need to shift positions at will and take unscheduled work breaks. *See* AR 416-17. Dr. Huang stated that plaintiff could only rarely lift and carry less than ten pounds, could occasionally twist,

ORDER - 5

and could never stoop, crouch, climb ladders, or climb stairs. *See* AR 417-18. Ultimately, Dr. Huang opined that plaintiff would likely miss more than four days of work per month due to his impairments. *See* AR 418.Dr. Huang completed another functional assessment in February 2013, in which he made substantially similar findings. *See* AR 432-36.

The ALJ gave Dr. Huang's March 2012 opinion little weight, finding Dr. Huang "seemed to base" his opinion "totally on the 2008 MRI." *See* AR 30. The ALJ also found that recent x-rays did not support the opinion and that plaintiff's reports of daily activities were inconsistent with Dr. Huang's opinion. *See id*. Lastly, the ALJ found "Dr. Huang's treatment notes do not show that he ever performed a complete physical examination" to determine plaintiff's functional capacity. *See id*. The ALJ therefore decided to give more weight to the opinion of examining physician Dr. Katherine Moreno, M.D. *See id*. The ALJ gave Dr. Huang's February 2013 opinion "the same weight for the same reasons because there is no objective evidence that [plaintiff's] condition has changed," stating further that "Dr. Huang had even recommended less frequent follow-ups and strongly encouraged regular exercise and weight loss," in his treatment notes, "which strongly indicates that [plaintiff's] condition was stable despite [his] allegations of worsening." *Id.*

When evaluating the weight to be given to a treating doctor, if the ALJ does not give controlling weight to the treating source's opinion, the ALJ will "apply the factors listed in paragraphs [20 C.F.R. § 404.1527](c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs [20 C.F.R. § 404.1527](c)(3) through (c)(6) of this section in determining the weight to give the opinion." 20 C.F.R. § 404.1527(c)(2). Such factors include the length of the treatment relationship; the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion; specialization of the doctor; and, other

ORDER - 6

factors, such as "the amount of understanding of [the] disability programs and their evidentiary requirements." 20 C.F.R. § 404.1527(c).

First, substantial evidence does not support the ALJ's finding that Dr. Huang's March 2012 opinion was based solely on the 2008 MRI. On the RFC questionnaire, Dr. Huang did identify the 2008 MRI as a test result that shows plaintiff's medical impairments. *See* AR 415. However, Dr. Huang also identified other "positive objective signs" of plaintiff's pain, including reduced range of motion, positive straight leg raising, tenderness, muscle spasm, and muscle weakness. AR 416. Dr. Huang's treatment notes, furthermore, support the existence of those objective signs, noting as well plaintiff's need to alternate between sitting and standing due to pain. *See* AR 304, 306, 308, 312, 315, 317, 319, 321, 323, 325, 329, 331-35. Dr. Huang also repeatedly opined that plaintiff was unable to return to light work. *See, e.g.,* 304, 306, 315, 323, 331. As such, the ALJ erred in finding Dr. Huang "seemed to base" his March 2012 opinion "totally" on the 2008 MRI. AR 30.

Second, the fact that more recent x-rays may have "showed only the beginning of osteoarthritis and osteopenia," is not on its own a legitimate reason for discounting the medical opinion of plaintiff's treating physician. AR 30. The ALJ fails to explain how those more recent x-rays necessarily contradict the earlier MRI test result. *See* AR 404, 419. The ALJ, therefore, appears to have improperly relied on his own lay opinion here. *See Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony); *Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for that of physician); *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2d Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion).

ORDER - 7

Third, substantial evidence does not support the ALJ's discrediting Dr. Huang's opinion because of inconsistencies with plaintiff's reported daily activities. It is true that an ALJ may use inconsistency between a physician's assessed limitations and a claimant's daily activities as a factor in weighing that physician's opinion. *See Morgan*, 169 F.3d at 601-02 (upholding rejection of physician's opinion that claimant suffered from marked limitations in part because claimant's reported activities of daily living contradicted that conclusion). Here, however, the function reports in the record and plaintiff's own testimony as well as that of his wife, fail to reveal any inconsistency between plaintiff's daily activities and the limitations assessed by Dr. Huang. *See* AR 47-50, 55, 59-61, , 224-29, 235-40, 242. Even plaintiff's reports to examining physicians Katherine Moreno, M.D., and Jesse Markman, M.D., upon which the ALJ also relies, fail to shed any real light on the frequency or extent to which plaintiff has engaged in activities of daily living. AR 276, 406.

Finally, the fact that Dr. Huang never performed a "complete" physical examination of plaintiff, as characterized by the ALJ, is not a specific and legitimate reason for discrediting the opinion of the treating physician. While Dr. Moreno may have performed a more comprehensive one-time examination of plaintiff (*see* AR 405-09), the record shows Dr. Huang has repeatedly examined plaintiff resulting in the objective findings supportive of the limitations he assessed as discussed above. *See, e.g.,* AR 304, 306, 308, 312, 315, 317, 319, 321, 323, 325, 329, 331-35. It is also not cleaer what the ALJ means by a "complete" physical examination, nor is there any requirement that a treating physician perform one before his or her opinion is entitled to be given the proper weight its due. That is, given Dr. Huang's treatment relationship with plaintiff and the many physical examinations he performed, it was error for the ALJ to have given greater weight to the opinion of Dr. Moreno.

ORDER - 8

In addition, because the ALJ stated she was rejecting Dr. Huang's February 2013 opinion for the same reasons she wsa rejecting the March 2012 opinion, the ALJ erred here as well. That Dr. Huang may have recommended less frequent follow-ups and strongly encouraged plaintiff to engage in regular exercise and weight loss, furthermore, does not necessarily indicate Dr. Huang did not believe plaintiff was as limited as he found or necessarily contradict Dr. Huang's opinion with respect thereto, even if the ALJ is correct that such recommendations suggest that plaintiff's condition had become stable. Thus, this too was not a proper reason for giving "little weight" to Dr. Huang's more recent opinion.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those

ORDER - 9

limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found that plaintiff had the RFC to perform:

**light work as defined in 20 CFR 404.1567(b), that is work involving lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. In addition, he is able to occasionally climb ramps and stairs, but no ropes, ladders, or scaffolds. He can occasionally balance, stoop, crouch, crawl, kneel, and reach overhead. He should avoid hazards and vibrations. He will need to alternate sitting and standing every 30 minutes.**

AR 26 (emphasis in original). However, because as discussed above the ALJ erred in evaluating the medical opinion evidence in the record, the ALJ's RFC assessment does not completely and accurately describe all of plaintiff's capabilities. Accordingly, here too the ALJ erred.

III.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See*

ORDER - 10

*Embrey*, 849 F.2d at 422. Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed hypothetical questions to the vocational expert containing substantially the same limitations as were included in the ALJ's RFC assessment. *See* AR 63-65. In response, the vocational expert testified that an individual with those limitations – and with the same age, education, and work experience as plaintiff – would be able to perform other jobs. *See id*. Based on the testimony of the vocational expert, the ALJ found plaintiff capable of performing other jobs existing in significant numbers in the national economy. *See* AR 31-32. Again, however, because the ALJ erred in evaluating the medical evidence and thus in assessing the plaintiff's RFC, the hypothetical question did not completely and accurately describe all of plaintiff's capabilities. Therefore, the ALJ's step five determination is not supported by substantial evidence and is in error.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further

ORDER - 11

administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d 1273 at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, because issues still remain in regard to the medical evidence in the record concerning plaintiff's physical functional capabilities, and therefore his ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 20th day of July, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 12